IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **BRYANT HARVEY, JR.,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 20-cv-384-NJR** |
| **WEXFORD HEALTH SOURCES, INC., JOHN VARGA, DEEDEE BROOKHART, MERRILL J. ZAHTZ, LORIE CUNNINGHAM, AMBER ALLEN, MICHAEL REMMERS, SHELIA LEWIS, RUSSELL GOINS, TAMMY WELTY, MATT BOSECKER, TAIJA ATKINS, BRANDON DEWEESE, ETHAN MARSHALL, JAROD CARTER, MAURY GOBLE, JAMIE PERKINS, ROXANNE KIDD, REID ACKERMAN, JUSTIN ECKELBERRY, ROB JEFFREYS, and JOHN BALDWIN,** | |
| **Defendants.** | |

## <u>MEMORANDUM AND ORDER</u>

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on motions for summary judgment filed by Reid Ackerman, Amber Allen, Taija Atkins, John Baldwin, Matt Bosecker, Dee Dee Brookhart, Jarod Carter, Lorie Cunningham, Brandon DeWeese, Justin Eckelberry, Maury Goble, Russell Goins, Rob Jeffreys, Roxanne Kidd, Shelia Lewis, Ethan Marshall, Jamie Perkins, Michael Remmers, and John Varga (Docs. 111, 112) and Tammy Welty, Dr. Merrill Zahtz, and Wexford Health Sources, Inc. ("Wexford") (Docs. 113 and 114). Plaintiff Bryant Harvey, Jr filed responses in opposition to the motions (Docs. 116 and 115, respectively).

The Wexford defendants filed a reply (Doc. 120). The Court held evidentiary hearings on March 9, 2022, and April 20, 2022.

BACKGROUND

On April 29, 2020, Harvey filed a Complaint alleging Defendants were deliberately indifferent to his conditions of confinement and medical needs while at Dixon Correctional Center ("Dixon") and Lawrence Correctional Center ("Lawrence"). He also raises claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act ("RA"), 29 U.S.C. §§ 794–94e. His Complaint sets forth the following claims:

> Count 1: Allen, Zahtz, Remmers, and Varga were deliberately indifferent under the Eighth Amendment to Harvey's medical needs while at Dixon.
>
> Count 2: Varga, Baldwin, and Remmers were deliberately indifferent under the Eighth Amendment to Harvey's need for an ADA accessible cell while at Dixon.
>
> Count 3: Defendants at Dixon violated Harvey's rights under the ADA and RA when they failed to provide him with an ADA accessible cell. Claim is against Defendant Jeffreys.
>
> Count 4: Remmers retaliated against Harvey in violation of the First Amendment by refusing to remove Plaintiff from an inaccessible cell.
>
> Count 6: Defendants Goins, Atkins (listed as Kelly), DeWeese, Marshall, Carter, Brookhart, Jeffreys, Goble, Perkins, Kidd (listed as McDonald), Ackerman, and Eckleberry were deliberately indifferent under the Eighth Amendment to Harvey's need for an ADA accessible cell and other assistance at Lawrence.
>
> Count 7: Defendants at Lawrence violated Harvey's rights under the ADA and RA when they failed to provide him with an ADA

Page 2 of 24

accessible cell. Claim is against Defendant Jeffreys.

Count 8:     Lewis, Bosecker, and Welty were deliberately indifferent under the Eighth Amendment to Harvey's need for breathing treatments.

Count 9:     Jeffreys, Brookhart, Cunningham, Goins, and Welty were deliberately indifferent under the Eighth Amendment to Harvey's need for medical care including the need for surgery, pain medications, and access to a wheelchair assistant.

Count 10:    Wexford was deliberately indifferent under the Eighth Amendment to Harvey's medical needs by having policies and practices that prevented him from obtaining surgery and medical care while at Dixon and Lawrence.

## A. Illinois Department of Corrections ("IDOC") Defendants

The following grievances are relevant to Harvey's claims against the IDOC Defendants.

### a. Dixon Grievances

1.   **December 6, 2018 Grievance (No. 5-19-552)**: This grievance complained about his need for surgery and the conditions of his cell. He learned that he was previously approved for surgery, but the surgery was cancelled, and he was transferred. Since he was transferred, Harvey was informed that he would have to start his request for surgery over at Dixon. Harvey indicates that he spoke to Dr. Zahtz about both and Dr. Zahtz informed him that the state did not want to pay for his surgery. Dr. Zahtz also indicated he would inform staff that Harvey should be placed in an ADA cell. As to the conditions of his cell, Harvey complained that there was no working toilet or running water, no table or stool, and no outlet for his fan (Doc. 116-2, p. 9). He was later placed in a non-ADA compliant cell. The grievance mentions A. Allen, Lieutenant Remmers, and a number of other officers but not Varga or Baldwin. This grievance was fully exhausted (*Id*. at p. 1). The grievance includes some claims in Counts 1 and 2.

**b. Lawrence Grievances**

1. **January 14, 2019 Grievance (No. 1-19-465)**: This grievance complained about his access to an air mattress, crutches, and walker (Doc. 116-4). He also spoke to four Jane Doe nurses about his access to Norco. Another Jane Doe nurse tried to give him a powdered substance which he refused. He spoke to Warden Goins about the issues. The grievance was fully exhausted.

2. **January 14, 2019 Grievance (No. 1-19-545)**: This grievance indicates Harvey asked a Jane Doe Nurse about his medications (Doc. 116-5). He also complained that the property officer took his air mattress, crutches, and walker. On January 23, 2019, the grievance was marked received by the grievance office but there is no indication as to whether it was returned to Harvey (*Id*. at p. 1).

3. **March 6, 2019 Grievance**: This grievance was filed at Lawrence about grievances from Dixon (Doc. 116-3). Harvey complained that he had not received a response from Dixon about his December 6, 2018 grievance, nor had he received responses for several other grievances dated November 14, 2018 and December 12, 2018. Harvey also submitted grievances dated December 10, 12, and 21, 2018, as well as the November 14, 2018 grievance. The December 21, 2018 grievance mentions Remmers (Doc. 116-3, p. 7). The other grievances mention his counselor, staff, and other officers. The Administrative Review Board ("ARB") rejected the grievances as past the timeframe. Harvey argues that the grievance demonstrates that he submitted additional grievances while at Dixon that were not responded.

4. **June 9, 2019 Grievance (No. 6-19-226)**: This grievance indicates that Harvey sought ice as part of his medical permit but that he spoke with Lewis and Nurse Welty who said he did not need ice and Welty would destroy his permit (Doc. 116-7). This grievance was fully exhausted. Although Defendants argue that Harvey was not allowed to proceed on any claims regarding ice, Harvey argues that ice was part of medical care.

5. **June 16, 2019 Grievance (No. 6-19-367)**: This grievance indicates that Lewis denied him access to chow and refused to provide him with ice for his medical condition (Doc. 116-8). The grievance was fully exhausted. The parties dispute as to whether these issues are part of Harvey's Complaint.

6. **July 16, 2019 Grievance (Dated July 14) (No. 8-19-19)**: This grievance complains that Sergeant Lewis and Bosecker denied his request for breathing treatments and he later suffered from convulsions (Doc. 116-9). The grievance was exhausted at the institution level and signed by the Chief Administrative Officer ("CAO") on September 9, 2019 (*Id.* at p. 2). Harvey signed the appeal on October 1, 2019, and was received by the ARB on November 8, 2019. The ARB returned the grievance, noting that it was received 30 days past the date of the CAO's signature (*Id.* at p. 1).

7. **July 26, 2019 Grievance (Dated July 25, 2019) (No. 8-19-55)**: This grievance indicates that Nurse Ward refused to give him medication, breathing treatments, and a dressing change (Doc. 116-10). Another nurse previously denied him a dressing change (*Id.*). He tried to speak with Brookhart about his issues, but she ignored him. He also notes that Lawrence and its employees have a practice of disregarding offenders' serious medical needs. The ARB rejected the grievance as untimely, noting that the CAO signed off on the grievance on September 20, 2019, and the grievance was not received by the ARB until November 8, 2019. Harvey marked the grievance as being sent to the ARB on October 1, 2019 (*Id.* at p. 2).

8. **August 7, 2019 Grievance (Dated August 6, 2019) (No. 8-19-177)**: In addition to being prevented from going to the chow hall on August 6, 2019, Harvey complained that Lewis denied his request to go to the healthcare unit for his breathing treatment that same date (Doc. 116-6). The grievance was fully exhausted.

9. **October 1, 2019 Grievance (Dated September 6, 2019) (No. 10-19-111)**: This grievance complained about his placement in a non-ADA compliant cell (Doc. 116-11). He sent a letter to Brookhart, Atkins (listed as Correctional Officer Kelly), Deweese, Carter, and Marshall. The grievance was deemed

not an emergency (*Id*.). Harvey stated in his affidavit that he re-submitted the grievance as a non-emergency and never received a response (Doc. 116-1, p. 4). He wrote another grievance on January 2, 2020, stating that he never received a response to his October grievance (No. 1-20-158) (Doc. 116-12). The grievance officer responded that the grievance was not re-submitted (*Id*. at p. 2). The CAO signed the grievance on February 14, 2020. Harvey signed the appeal on March 4, 2020. The ARB rejected the grievance as untimely received after receiving the grievance on May 1, 2020 (*Id*. at p. 1). He also submitted the grievance to the ARB on January 6, 2020, with a letter indicating that he had not received any "positive" response (Doc. 116-13). The ARB returned the grievance noting that there was no facility response and it was not submitted in a timely fashion (*Id*. at p. 1).

10. **December 31, 2019 Grievance (Dated December 23, 2019) (No. 1-20-88)**: This grievance complains that Harvey did not receive a medically adequate bed upon returning from Carle Hospital (Doc. 116-14). He asked for a transfer to a facility closer to Champaign for treatment but was ignored. He received a response from the CAO on March 19, 2020, and appealed the grievance to the ARB on March 26, 2020. The ARB received the grievance on May 1, 2020, and marked the grievance as untimely. Defendants argue that this grievance was not received by the ARB until after the filing of the Complaint.

11. **March 5, 2020 Grievance (No. 3-20-71)**: The grievance notes that Lawrence and its medical administration continue to ignore his medical issues and refuse to transfer him to a prison closer to University of Chicago where he could receive care (Doc. 116-15). The hospital asked the warden for a transfer, but a transfer was not granted. The grievance was exhausted at the institution and signed by the CAO on March 19, 2020. Harvey signed the appeal on March 26, 2020. The ARB received the grievance on May 1, 2020, and deemed the grievance untimely as it was received 30 days after the CAO's decision. Defendants argue that this grievance was not received by the ARB until after the filing of the Complaint.

12. **March 16, 2020 Grievance (No. 3-20-286)**: Harvey acknowledges that this grievance against Brookhart was not fully exhausted prior to filing his lawsuit.

## B. Wexford Health Sources, Inc.

### a. Dixon Grievance

Plaintiff argues that his December 6, 2018 grievance (discussed above) is relevant to his claim against Dr. Zahtz.

### b. Lawrence Grievances

In addition to the above discussed grievances, including the March 6, 2019, January 14, 2019, June 9, 2019, July 26, 2019, December 31, 2019, and March 5, 2020 grievances, Harvey also argues that the following grievances are relevant to his claims against Welty and Wexford.

1. **January 2019 Grievances**: A January 18, 2019 grievance (No. 1-19-348) refers to medication received from a Nurse Garrard (Doc. 115-6). A January 19, 2019 grievance (No. 1-19-346) complains about a Jane Doe Nurse failing to provide him with medication (Doc. 115-7). A January 25, 2019 grievance (No. 1-19-447) also refers to a Jane Doe Nurse and Harvey's access to medication and his pain (Doc. 115-8). The grievances are all marked as received by the grievance office but there is no indication as to whether it was returned to Harvey. The medical records, according to Welty, indicate that she did not participate in Harvey's medication distribution during January (Doc. 114-5).

2. **October 20, 2019 Grievance (Dated October 17, 2019) (No. 10-19-421)**: Harvey complains that Nurse Welty harassed him and rushed his breathing treatment (Doc. 115-11). The grievance was exhausted at the institution level, but the ARB rejected the grievance because Harvey failed to place the incident date on the grievance. In his affidavit, Harvey indicates that the grievance was about a breathing treatment he received on October 17 (Doc. 115-1, p. 3). The counselor

and grievance officer noted that Harvey was not in the healthcare unit on Oct. 17 (Doc. 115-11).

3. **January 30, 2020 Grievance (No. 2-20-092)**: This grievance complains that on January 22, 2020, Dr. Pittman ordered an IV for his pain, but several nurses including Nurse Maddox, Nurse Ferguson, and an unknown nurse tried to place the IV but were unable to do so (Doc. 115-13). No nurse tried to place the IV the following day. The grievance was exhausted at the institution and signed by the CAO on March 9, 2020. Harvey signed the appeal on April 2, 2020, and the grievance was received by the ARB on May 1, 2020, and deemed untimely. Defendants argue that this grievance was not received by the ARB until after the filing of the Complaint.

A number of grievances were untimely received by the ARB. This includes: July 16, 2019 Grievance (No. 8-19-19), July 26, 2019 Grievance (No. 8-19-55), December 31, 2019 Grievance (No. 1-20-88), and March 5, 2020 Grievance (No. 3-20-71). Harvey argues that he sent them in a timely fashion and they should have been received by the ARB in time. Heather Cecil, the mailroom supervisor at Lawrence in 2019, testified by affidavit that correctional officers pick up mail from cells in the morning and the mailroom process the mail to the ARB and mails it via the United States Postal Service on the same day that it is received by the mailroom (Doc. 112-8, p. 1). She testified that she was unaware of interruptions in the mail in 2019, nor was she aware of any instances where mail was held for 30 days before being sent out (*Id*.). Adewale Kuforihi, ARB member and later chairman, testified that mail from the various prisons is typically received by the ARB within a few days of being sent, although it can sometime take up to five days (Doc. 112-9, p. 1). When the appeals are received, they are stamped with the date they are received (*Id*.). Appeals must be *received* by the ARB within 30 days after the date of the decision

Page 8 of 24

(*Id*. at p. 2). Appeals received after those 30 days are deemed untimely (*Id*.). Kuforihi was also unaware of any interrupts in the mail procedures or USPS during the relevant time periods (*Id*.).

## LEGAL STANDARDS

Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. §1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. (emphasis added). The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id*. Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Page 9 of 24

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir. 2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Seventh Circuit set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

## A. Illinois Exhaustion Requirements

As an IDOC inmate, Harvey was required to follow the regulations contained in IDOC's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. 20 Ill. Administrative Code §504.800 *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. 20 Ill. Admin. Code §504.810(a). The grievance form must:

contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code §504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. 20 Ill. Admin. Code §504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. 20 Ill. Admin. Code §504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 Ill. Admin. Code §504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing. *Id.*

If the inmate is not satisfied with the CAO's response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 Ill. Admin. Code §504.850(a). The inmate shall attach copies of the Grievance Officer's report and the CAO's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 Ill. Admin. Code

§504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 Ill. Admin. Code §504.850(e).

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. 20 Ill. Admin. Code §504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 Ill. Admin. Code §504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 Ill. Admin. Code §504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 Ill. Admin. Code §504.850(f).

ANALYSIS

A. IDOC Defendants

    a.  **Count 1 (Allen, Remmers Varga) and Count 2 (Varga, Baldwin, and Remmers)**

As to Counts 1 and 2, Varga and Baldwin are not mentioned in the grievances, but

Harvey argues that his December 6, 2018 grievance (No. 5-19-552) included allegations against both officials because he mentioned "prison officials" and "the state" in relation to his need for surgery and an ADA-compliant cell (Doc. 116-2, p. 9). The grievance was fully exhausted; at no time was the grievance rejected for not identifying officials. *Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005); *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) ("Where prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting the state and inviting corrective action."). Further, Harvey's grievance referred to administrative decisions by state and prison officials which would not require much investigation of the grievance to determine which officials, including the warden and IDOC director, could be involved in those decisions. *Maddox*, 655 F.3d at 722. Thus, Harvey's grievance served its function and was sufficient to include the allegations against Varga and Baldwin.

The Court further notes that the December 6, 2018 grievance mentions both Remmers and Allen. Thus, the claims against them in Count 1 and the claim against Remmers in Count 2 were properly exhausted.

### b.  Counts 3 and 4

Defendants concede that Harvey exhausted his claims in Count 3 against Rob Jeffreys (official capacity only) for ADA and/or RA claims and Count 4 against Remmers.

### c.  Count 6 (Goins, Kelly, DeWeese, Marshall, Carter, Brookhart, Jeffreys, Goble, Perkins, Kidd, Ackerman, and Eckleberry) and Count 7 (ADA and RA claim at Lawrence against Jeffreys)

As to Counts 6 and 7, Harvey submitted an emergency grievance dated October 1, 2019 (No. 10-19-111). The grievance was marked not an emergency and returned to

Harvey on October 8, 2019 (Doc. 116-11, p. 1). Harvey maintains that he submitted it as a normal grievance but never received a response. If correct, then he would have been thwarted in his attempts to exhaust this grievance. *See Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2008) (an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities but never receives a response).

The Court finds Harvey's testimony as to this grievance credible. Harvey testified that he never received a response to the grievance after resubmitting it. He then submitted a second grievance informing officials that he never received a response (Doc. 116-12). Harvey testified that it was typical for him to file a second grievance if he did not receive a response in the required time frame. That grievance indicates that he submitted Grievance No. 10-19-111 but never received a response (*Id*. at p. 3). The filing of this second grievance, indicating he never received a response to the first, lends credibility to his testimony that he never received the grievance back from the counselor. He also submitted a letter to the ARB, noting that he never received a response to Grievance No. 10-19-111, which further lends credibility to his claims (Doc. 116-13). Thus, the Court finds that Harvey was thwarted in his attempts to grieve Grievance No. 10-19-111.

But that grievance only identifies certain Defendants and claims. The grievance does allege that his cell does not meet his needs for purposes of the ADA and also identifies Brookhart, Atkins (listed as Correctional Officer Kelly), Deweese, Carter, and Marshall. Thus, his grievance served to exhaust his claims in Count 7, as well as against Brookhart, Atkins, Deweese, Carter, and Marshall in Count 6. Harvey's Complaint,

however, also raised claims in Count 6 against Goins, Jeffreys, Goble, Perkins, Kidd (listed as McDonald), Ackerman, and Eckleberry. Harvey argues that his grievance encompasses those Defendants because he referred to "prison officials" (Doc. 116-11, p. 1). Specifically, his grievance indicates that "by policy, practice, or custom prison officials continue to ignore the serious need to accommodate [his condition]" (*Id.*). While the reference to policies and practices of prison officials could fairly implicate Jeffreys, the other Defendants were officers who Harvey alleges he spoke with about his placement and they refused to assist him (Doc. 8, p. 4). Nothing in his grievance indicates that he spoke to these individuals or provides enough information that would implicate these officers and allow the prison to investigate them. Accordingly, Goins, Goble, Perkins, Kidd, Ackerman, and Eckleberry are **DISMISSED without prejudice** for Harvey's failure to exhaust the claims against them. The claim in Count 6 against Brookhart, Atkins, Deweese, Carter, Jeffreys, and Marshall, as well as the Count 7 ADA claim, are considered exhausted and shall proceed.

### d.  Count 8 (Lewis and Bosecker breathing treatments)[1]

Harvey points to his July 16, 2019 grievance (No. 8-19-019) for his claims against Lewis and Bosecker (Doc. 116-9). The grievance was deemed an emergency and ruled on the merits by the grievance officer and CAO (*Id.* at p. 2). Harvey dated the appeal on

---

[1] Although Harvey argues that Lewis should be deemed to have waived any argument on exhaustion because it was not raised in the original motion for summary judgment, the Court struck the original motion and granted Defendants leave to re-file those motions. Nothing in the Court's Order (Doc. 110) limited the Defendants to their original arguments. Thus, the Court does not consider Lewis's new arguments waived.

October 1, 2019 (*Id.*). He attached a certificate of service for that grievance, along with three other grievances, dated October 3, 2019 (Doc. 114-1, p. 147). Harvey testified that he submitted the grievance for the mail on the date that he signed the certificate of service. The grievance was not received by the ARB until November 8, 2019 (Doc. 116-9, p. 1).

Defendants argue that the grievance was properly rejected by the ARB because it was not *received* within 30 days of the CAO's signature. 20 Ill. Admin. Code §504.850(a). Harvey argues that he did all that he could to exhaust his grievance by placing it in the bars for pickup after signing the certificate of service on October 3, 2019.

The Court does not find Harvey's testimony on this point credible. Harvey testified that he submitted the grievance for appeal on the date that he signed the appeal on October 1, 2019 (Doc. 116-9, p. 2). He further testified that the only time that he did not submit an appeal on the signed date was when that date fell on a Friday, Saturday, or Sunday. In which case, he would submit the grievance on the following business day. But October 1, 2019, did not fall on a weekend as Harvey alleged. October 1, 2019, fell on a Tuesday, and October 3, 2019, the date of his certificate of service, fell on a Thursday. Thus, neither date fell on a weekend as Harvey testified. The evidence does not suggest that Harvey submitted his grievance for appeal on either date as he testified at the evidentiary hearing.

Further, Defendants offered several witnesses who testified about the processing of grievance appeals to the ARB. Heather Cecil, an office administrator who supervised the mailroom, testified that grievances to the ARB are considered privileged mail. The grievances come in mail bags directly from the housing units and the mailroom staff sort

the mail and post the appeals for mail. The mailroom makes efforts to mail the ARB appeals the same day. She testified that she was not aware of any delays during the relevant time period. Nor was she aware of any particular officer holding on to an inmate's mail. Adewale Kuforihi, an executive with the Office of Inmate Issues, reviewed and answered grievances. He testified that grievance appeals typically take five days to reach the ARB once mailed from the prisons. He was not aware of it ever taking several weeks for a grievance to reach the ARB. He also testified that grievances had to be *received* by the ARB within 30 days of the CAO's decision to be considered timely. The records also indicate that Harvey submitted another appeal he dated October 19, 2019, that was received by the ARB on November 7, 2019 (Doc. 112-1, pp. 115-16). Harvey's attached certificate of service indicates that he submitted this appeal on October 20, 2019 (*Id*. at p. 119). It took 14 business days to reach the ARB from the date of the certificate of service.

Defendants' witness testimony indicates that if Harvey submitted the grievance appeal as he testified, it would have been received by the ARB well before November 8, 2019. Although other grievances took longer than the typical five days testified to by Mr. Kuforihi, if Harvey had submitted his grievance on October 3, 2019, as he testified, it would have been received well before it actually was received in this case. Further, Harvey's testimony did not match the evidence in the record. He did not submit the appeal on the next business day after a weekend because neither of his listed dates fell on a weekend. And appeals he mailed later arrived before Grievance No. 8-19-019. There is also no evidence that his appeal had been tampered with after he submitted it for mailing. Thus, the Court finds that Defendants met their burden of demonstrating that Harvey

failed to properly exhaust Grievance No. 8-19-019. He did not send it in a timely manner so that it would be received within 30 days of the CAO's signature. Thus, it was properly rejected, and he failed to exhaust his claims in Count 8 against Lewis and Bosecker. *See Maddox*, 655 F.3d at 721 (If an inmate fails to properly use the grievance system "the prison administrative authority case refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted.").

### e. Count 9 (Jeffreys, Brookhart, Cunningham, Goins deliberate indifference need for surgery, pain medications, and access to a wheelchair assistant)

As to Goins, Harvey filed a grievance dated January 14, 2019 grievance (Doc. 116-4). That grievance, which was fully exhausted, mentions that he informed Goins about his need for pain meds and access to mattress, crutches, and walker. Thus, the grievance exhausted his claims against Goins for pain medications but does not mention nor exhausted any claims regarding his need for surgery and/or access to a wheelchair assistant. Although the grievance does not mention Cunningham, in responding to the grievance the grievance officer obtained a response from Cunningham. Harvey did not have to file successive grievances raising the same issues to include Cunningham. *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). Thus, the January 14, 2019, grievance also served to exhaust his claims against Cunningham as to his need for pain medication. The grievance does not serve to exhaust Harvey's claims against Jeffreys, however, as Harvey did not mention Jeffreys nor any policy or administrative decision that could be attributed to Jeffreys. Further, Jeffreys did not review the grievance (Doc. 116-4, p. 1). Thus, Harvey failed to exhaust his claims against Jeffreys in Count 9.

Harvey points to his July 26, 2019 grievance (No. 8-19-55) in support of his deliberate indifference claim against Brookhart (Doc. 116-10). Like his July 16, 2019 grievance (No. 8-19-019), Harvey maintains that he signed his appeal on October 1, 2019, his certificate of service on October 3, 2019, and then promptly submitted it for mailing to the ARB. The grievance was returned because it was received over 30 days after the CAO's decision. As with his July 16, 2019 grievance (No. 8-19-019), the Court does not find Harvey's testimony regarding his submission of the appeal to be credible. The Court finds that he did not timely appeal the grievance. Harvey points to two other grievances, a grievance dated March 5, 2020 (Grievance No. 03-20-071) and a grievance dated December 31, 2019 (Grievance No. 1-20-88). But these grievances were also returned because the appeals were received 30 days after the CAO's decision (*See* Doc. 116-14, p. 2; Doc. 116-15, p. 1). The Court does not find his testimony that he submitted the grievances in a timely manner to be credible. Thus, Harvey did not exhaust his claims against Brookhart in Count 9.

### C. Wexford Defendants

#### a. Welty (Counts 8 and 9)

As to the claim against Welty in Count 8 for breathing treatments, Harvey argues that his October 17, 2019 (Doc. 115-11) grievance against Welty about his breathing treatment should not have been rejected by the ARB for failure to provide a date because Harvey dated the grievance as October 17, 2019, when he alleges the breathing treatment occurred. Although Harvey argued at the evidentiary hearing that his claim in Count 8 against Welty was related to an October 17, 2019 visit, the Court's threshold order makes

clear that Harvey's claim against Welty is in regards to breathing issues which occurred on July 14, 2019 (Doc. 8, p. 3). Harvey's October 2019 grievance was either about a different encounter with Welty in October or was woefully late in grieving the July 14, 2019 encounter with Welty. Either way, it was properly rejected by the ARB for not having an incident date and the grievance officials noted there was no documentation of a healthcare visit on October 17, 2019 (Doc. 115-11, pp. 1-2). Because the grievance was rejected and not ruled on the merits, the grievance was not exhausted. *See Maddox*, 655 F.3d at 721. Thus, Harvey failed to exhaust his claims against Welty in Count 8.

As to Count 9, there are two grievances relevant to Harvey's claims regarding the distribution of medication. Harvey's January 14, 2019 grievance alleges that multiple nursing staff told him that they do not offer narcotics and that he would not receive his pain medication (Doc. 115-4, p. 9). Welty submitted an affidavit that she did not administer pain medication to Harvey in January 2019. Further, the attached record does not indicate that she participated in handing out his medication during the relevant time period (Doc. 114-5, p. 3). His grievance indicates that he spoke to four Jane Doe nurses about his medication and continued to inform nursing staff about his need for medication (Doc. 115-4, p. 9). He also argued that he had just arrived at Lawrence on January 9, 2019 and did not know any of the nurses' names at the time. But nothing in the grievance or the records would have led prison officials investigating the grievance to Welty. There is no description of any of the nurses, and the records do not indicate that Welty was one of the nurses. Thus, the January 14, 2019 does not exhaust his claims against Welty.

Harvey also argues that his June 9, 2019 grievance exhausts his claims against

Welty. At the second evidentiary hearing, his counsel argued that the receipt of medically necessary ice was included in Harvey's claims. But the Court's threshold order is clear that the claim against Welty was for medical care including "the need for surgery, pain medications, and access to a wheelchair assistant" (Doc. 8, p. 6). As it relates to Welty, the Court's Order noted that Harvey alleged Welty denied him pain medications on numerous occasions (*Id*. at p. 4). The only claim related to ice, Count 5 against Fiero for placing bleach in Harvey's ice, was severed into a separate case (*Id*. at p. 7). There were no allegations that Welty failed to provide him with ice and the Court's Order makes clear that "[a]ny other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled." (*Id*. at p. 7). Thus, there are no claims in the Complaint which would be exhausted by the June 9, 2019 grievance.

Accordingly, Harvey failed to exhaust his claims against Welty.

### b.  Dr. Zahtz (Count 1)

As to Dr. Zahtz, Harvey's December 6, 2018 grievance clearly identifies Zahtz and states that Harvey spoke to him about his current conditions, his need to be placed in an ADA cell, and about his surgery (Doc. 115-2). Harvey specifically complained about his request for surgery in the grievance (*Id*. at p. 9). The grievance was also fully exhausted.

Dr. Zahtz argues that the grievance could not serve to exhaust his claims regarding surgery because the medical records reveal that he only saw Dr. Zahtz for a blood draw on the date identified in Harvey's grievance. But the grievance discussed Harvey's need for surgery. Further, the grievance was ruled on the merits of the complaints about Dr.

Zahtz. At no time did any of the grievance officials indicate that his complaints about Dr. Zahtz were untimely. While the prison administration can refuse to hear a grievance if the inmate fails to properly utilize the grievance process, *see Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006), IDOC officials can excuse a prisoner's non-compliance and review the grievance on the merits. *See Riccardo v. Rausch,* 375 F.3d 521, 523–24 (7th Cir. 2004) (noting that an IDOC prisoner's grievance was untimely, but that IDOC officials nonetheless resolved the grievance on its merits). Because the grievance officials did not dismiss the grievance on the grounds it was untimely, as Dr. Zahtz now alleges, and instead ruled on the merits of Harvey's claims, the grievance served its function. *See Maddox*, 655 F.3d at 722 ( "[A] procedural shortcoming like failing to follow the prison's time deadlines amounts to a failure to exhaust only if prison administrators explicitly relied on that shortcoming. Where prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting the state and inviting corrective action, and defendants cannot rely on the failure to exhaust defense.") (citations omitted). Thus, Harvey exhausted his claims against Dr. Zahtz.

### c. Wexford (Count 10)

Harvey's claim against Wexford alleges that Wexford had policies and practices which prevented Harvey from obtaining surgery and medical care at both Dixon and Lawrence. Harvey points to three grievances which he argues exhaust his policy claims against Wexford: December 6, 2018 (Grievance No. 5-19-552), January 14, 2019 (Grievance No. 1-19-465), and June 9, 2019 (Grievance No. 6-19-226). His January 14, 2019 grievance

does mention a policy, practice, and custom of medical staff, alleging that there is a policy to mistreat and provide negligent healthcare, leaving Harvey to suffer with pain (Doc. 115-4, p. 9). His December 6, 2018 grievance also indicated that Dr. Zahtz informed him that the "state" did not want to pay for his surgery (*Id.* at p. 9). Although referring to the "state" and not Wexford, Harvey could not be required to know who made decisions regarding surgical care. Thus, the Court finds that these grievances were enough to provide notice to officials that Harvey believed Wexford policies and practices attributed to the issues with his health care. Wexford's motion for summary judgment on Count 10 is, accordingly, **DENIED**.

CONCLUSION

For the reasons stated above, Defendants' motions for summary judgment (Docs. 111, 112, 113, and 114) are **GRANTED in part and DENIED in part**. Specifically, the claim against Goins, Goble, Perkins, Kidd, Ackerman, and Eckleberry in Count 6 is **DISMISSED without prejudice**. The claim against Lewis, Bosecker, and Welty in Count 8 is **DISMISSED without prejudice**. The claim against Brookhart, Jeffreys, and Welty in Count 9, as well as all claims for his need for surgery and access to a wheelchair assistant in Count 9 are also **DISMISSED without prejudice**.

The following claims remain:

**Count 1:**     **Allen, Zahtz, Remmers, and Varga were deliberately indifferent under the Eighth Amendment to Harvey's medical needs while at Dixon.**

**Count 2:**     **Varga, Baldwin, and Remmers were deliberately indifferent under the Eighth Amendment to Harvey's need for an ADA accessible cell while at Dixon.**

Count 3:    ADA and RA claim at Dixon against Jeffreys.

Count 4:    Remmers retaliated against Harvey in violation of the First Amendment by refusing to remove Harvey from an inaccessible cell.

Count 6:    Brookhart, Atkins, DeWeese, Carter, Jeffreys, and Marshall were deliberately indifferent under the Eighth Amendment to Harvey's need for an ADA accessible cell and other assistance at Lawrence.

Count 7:    ADA and RA claim at Lawrence against Jeffreys.

Count 9:    Goins and Cunningham were deliberately indifferent under the Eighth Amendment to Harvey's need for pain medication.

Count 10:   Wexford was deliberately indifferent under the Eighth Amendment to Harvey's medical needs by having policies and practices that prevented him from obtaining surgery and medical care while at Dixon and Lawrence.

Now that the issue with exhaustion his been resolved, the stay of discovery is **LIFTED**. The Court will enter a scheduling order setting forth the perimeters and deadlines for discovery on the merits of Harvey's claims.

IT IS SO ORDERED.

DATED:   June 28, 2022

_____
**NANCY J. ROSENSTENGEL**
Chief U.S. District Judge